Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/05/2022 08:07 AM CDT

Shawn Wheelbarger, appellant, v.
Detroit Diesel ECM, LLC, a Michigan
limited liability company, and Mike
Rodriguez, doing business as M & C
Distributing, appellees.

___ N.W.2d ___

Filed June 28, 2022.    No. A-21-556.

1. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to determine the matter independently of the trial court.

2. **Jurisdiction: Rules of the Supreme Court: Pleadings: Appeal and Error.** When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

3. **Motions to Dismiss: Appeal and Error.** In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

4. **Jurisdiction: Words and Phrases.** Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions.

5. **Pleadings: Proof.** Confronted with a special appearance, a plaintiff has the burden to establish facts which demonstrate the court's personal jurisdiction over the defendant.

6. **Pleadings: Jurisdiction: Affidavits: Proof.** In a hearing on a special appearance, an affidavit may be used to prove or disprove the factual basis for a court's assertion or exercise of personal jurisdiction over a defendant.

7. **Due Process: Jurisdiction: States.** When determining whether a court has personal jurisdiction over a party, it must first determine whether a

- 146 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

state's long-arm statute is satisfied, and if the long-arm statute is satisfied, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process.

8. **Constitutional Law: Jurisdiction: States.** Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536 (Reissue 2016), provides that a court may exercise personal jurisdiction over a person who has any contact with or maintains any relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

9. **Jurisdiction: States: Legislature: Intent.** It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute.

10. **Due Process: Jurisdiction: States.** The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations.

11. ____: ____: ____. To subject an out-of-state defendant to personal jurisdiction in a forum court, due process requires the defendant to have minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice.

12. ____: ____: ____. Due process is satisfied where the nonresident defendant's minimum contacts are such that the defendant should reasonably anticipate being haled into court there.

13. **Jurisdiction: States.** Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections.

14. ____: ____. A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction or specific personal jurisdiction.

15. ____: ____. A court has general personal jurisdiction over a nonresident defendant if the defendant has engaged in continuous and systematic business connections with the forum state.

16. ____: ____. When a court is exercising general personal jurisdiction, the plaintiff's claim does not have to arise directly from the defendant's conduct in the forum state.

17. ____: ____. Specific personal jurisdiction arises where the nonresident defendant's contacts with the forum state are neither continuous nor systematic, but the plaintiff's claim arises from the defendant's minimum contacts with the forum.

- 147 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

18. ____: ____. Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with Nebraska are the result of unilateral acts performed by someone other than the defendant, or whether the defendant himself or herself has acted in a manner which creates substantial connections with the forum state.

19. ____: ____. If a court determines that a defendant has sufficient minimum contacts with the forum state, the court must then weigh the facts of the case to determine whether exercising personal jurisdiction would comport with fair play and substantial justice.

20. ____: ____. The "sliding scale" test in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), considers a website's interactivity and the nature of the commercial activities conducted over the internet to determine whether the courts have personal jurisdiction over nonresident defendants.

21. **Jurisdiction: States: Constitutional Law: Statutes.** The "sliding scale" test in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), does not amount to a separate framework for analyzing internet-based jurisdiction, but, rather, relies on traditional statutory and constitutional principles.

22. **Jurisdiction: States.** For there to be specific personal jurisdiction, the cause of action must arise out of or be related to the defendant's contacts with the forum state.

23. **Jurisdiction: States: Sales.** Mere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.

24. **Jurisdiction: States.** In describing how the general principles governing an evaluation of minimum contacts relate to the test in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), a court considers five distinct factors: (1) the nature and quality of the defendant's contacts with the forum state, (2) the quantity of contacts, (3) the relationship between the cause of action and the contacts, (4) the forum state's interest in providing a forum for its residents, and (5) the convenience of the parties. The first three factors are closely related and are of primary importance, while the last two factors are secondary.

25. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

- 148 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen for appellant.

No appearance for appellees.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Welch, Judge.

## INTRODUCTION

Shawn Wheelbarger appeals from the order of the Buffalo County District Court dismissing his complaint against Detroit Diesel ECM, LLC (Detroit Diesel), and Mike Rodriguez, doing business as M & C Distributing (M & C), for lack of personal jurisdiction. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

In August 2017, Wheelbarger filed a complaint which asserted that Newcomb Diesel LLC (Newcomb), Detroit Diesel, and Rodriguez, doing business as M & C, were liable for damage to Wheelbarger's semi-trucks which was caused by software installed by Newcomb while completing maintenance and repairs on the trucks.

Newcomb is a limited liability company organized in Nebraska with its principal place of business located in Kearney, Nebraska. M & C was the sole proprietorship of Rodriguez, who resided in Shelbyville, Michigan, prior to Rodriguez' transitioning the business into a limited liability company which he named "Detroit Diesel." Detroit Diesel is organized in Michigan, with its principal place of business in Wayland, Michigan. Rodriguez, doing business as M & C, and Detroit Diesel will collectively be referred to as the "Michigan Defendants." The Michigan Defendants entered a special appearance and filed a motion to dismiss Wheelbarger's complaint for lack of personal jurisdiction. The motion to dismiss asserted that the Michigan Defendants did not have sufficient minimum contacts with the State of Nebraska to establish general or specific personal jurisdiction and that

- 149 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

Wheelbarger failed to satisfy his burden to show that the court had jurisdiction over them.

At a hearing held in February 2018, the matter was submitted solely on the pleadings and supporting affidavits.

In March 2018, the district court dismissed Wheelbarger's complaint as to the Michigan Defendants stating:

> In the present matter there is no evidence of any contact between [Wheelbarger] and the Michigan [Defendants], the reasonable inferences are that there was not. The benchmark for determining whether the exercise of personal jurisdiction satisfies due process is whether the defendant's minimum contacts with the forum state are such that the defendant should reasonably anticipate being haled into court there. *VKGS* [*v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013)]. The Court finds that [Wheelbarger] has failed to make a prima facie showing that the Michigan Defendants have the requisite minimum contacts with the State of Nebraska.

Wheelbarger and Newcomb subsequently filed a joint motion and stipulation for dismissal with prejudice as to Newcomb. The court dismissed the action on June 4, 2021. Wheelbarger appealed the court's March 2018 order granting the Michigan Defendants' motion to dismiss after the final order was entered on June 4.

## ASSIGNMENT OF ERROR

Wheelbarger assigns that the district court erred in granting the Michigan Defendants' motion to dismiss on the basis that the court lacked personal jurisdiction over the Michigan Defendants. Wheelbarger does not assert any error related to the district court's dismissal of Newcomb.

## STANDARD OF REVIEW

[1] When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to determine the matter independently of the trial court. *Brunkhardt v. Mountain*

- 150 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

*West Farm Bureau Mut. Ins.*, 269 Neb. 222, 691 N.W.2d 147 (2005).

[2] When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo. *Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018); *Applied Underwriters v. E.M. Pizza*, 26 Neb. App. 906, 923 N.W.2d 789 (2019).

[3] In reviewing the grant of a motion to dismiss, an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Id.*

## ANALYSIS

[4-6] Before addressing Wheelbarger's assigned error, a brief review of the law concerning personal jurisdiction is in order. Personal jurisdiction is the power of a tribunal to subject and bind a particular entity to its decisions. *Quality Pork Internat. v. Rupari Food Servs.*, 267 Neb. 474, 675 N.W.2d 642 (2004). Confronted with a special appearance, a plaintiff has the burden to establish facts which demonstrate the court's personal jurisdiction over the defendant. *Id.* In a hearing on a special appearance, an affidavit may be used to prove or disprove the factual basis for a court's assertion or exercise of personal jurisdiction over a defendant. *Id.* When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court. *Id.*

[7-16] As this court recently explained in *Applied Underwriters v. E.M. Pizza*, 26 Neb. App. at 911-13, 923 N.W.2d at 796-97:

> When determining whether a court has personal jurisdiction over a party, it must first determine whether a state's long-arm statute is satisfied, and if the long-arm

- 151 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

statute is satisfied, whether minimum contacts exist between the defendant and the forum state for personal jurisdiction over the defendant without offending due process. See *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014). Nebraska's long-arm statute, § 25-536, provides that a court may exercise personal jurisdiction over a person who has any contact with or maintains any relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States. *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013). It was the intention of the Legislature to provide for the broadest allowable jurisdiction over nonresidents under Nebraska's long-arm statute. *Id.* . . .

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). To subject an out-of-state defendant to personal jurisdiction in the forum court, due process requires the defendant to have minimum contacts with the forum state so as not to offend traditional notions of fair play and substantial justice. *VKGS v. Planet Bingo, supra*. Due process is satisfied where the nonresident defendant's minimum contacts are such that the defendant should reasonably anticipate being haled into court there. See *id.* Further, whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's actions created substantial connections with the forum state, resulting in the defendant's purposeful availment of the forum state's benefits and protections. *Id.*

A court exercises two types of personal jurisdiction depending upon the facts and circumstances of the case: general personal jurisdiction and specific personal jurisdiction. *Nimmer v. Giga Entertainment Media*, 298

- 152 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

Neb. 630, 905 N.W.2d 523 (2018). A court has general personal jurisdiction over a nonresident defendant if the defendant has engaged in continuous and systematic business connections with the forum state. See *id*. When a court is exercising general personal jurisdiction, the plaintiff's claim does not have to arise directly from the defendant's conduct in the forum state. See *id.*

In the present case, the Michigan Defendants did not engage in continuous and systematic business connections in Nebraska, and Wheelbarger does not appear to assert otherwise. Therefore, if the court has personal jurisdiction over the Michigan Defendants, it can only be under specific personal jurisdiction.

[17-19] As we further stated:

Specific personal jurisdiction arises where the nonresident defendant's contacts with the forum state are neither continuous nor systematic, but the plaintiff's claim arises from the defendant's minimum contacts with the forum. See [*Nimmer v. Giga Entertainment Media*, 298 Neb. 630, 905 N.W.2d 523 (2018)]. Whether a forum state court has personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state are the result of unilateral acts performed by someone other than the defendant, or whether the defendant himself acted in a manner which creates substantial connections with the forum state. *Quality Pork Internat. v. Rupari Food Servs*., 267 Neb. 474, 675 N.W.2d 642 (2004).

If a court determines that a defendant has sufficient minimum contacts with the forum state, the court must then weigh the facts of the case to determine whether exercising personal jurisdiction would comport with fair play and substantial justice. See *VKGS v. Planet Bingo*, 285 Neb. 599, 828 N.W.2d 168 (2013).

*Applied Underwriters v. E.M. Pizza*, 26 Neb. App. 906, 913, 923 N.W.2d 789, 797 (2019).

- 153 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

MINIMUM CONTACTS

Here, the district court found that the Michigan Defendants did not have sufficient minimum contacts with Nebraska, and therefore, it never reached the issue of whether it would be fair and reasonable to exercise personal jurisdiction over them. We agree.

The relevant facts in this record were contained in an affidavit provided by Rodriguez. Rodriguez explained that he operates M & C and Detroit Diesel as a "'middleman'" to connect software designers to mechanics in need of software for semi-tractor engines to increase performance. In that regard, Rodriguez explained he has a website, which does not target Nebraska or its residents. Newcomb Diesel responded to this website looking for a software developer. To that end, Rodriguez relayed Newcomb Diesel's request to a software designer who then communicated directly with Newcomb Diesel to obtain its desired software. Rodriguez explained that this is the normal way in which his business operates. He stated that he is not involved in communications between the mechanic and software designer and that the software itself is sent directly by the designer to the mechanic. Rodriguez is involved in invoicing as a way of collecting a commission for having made the contact. To that end, Rodriguez explained that as to this particular request, neither Rodriguez nor Detroit Diesel manufactured, designed, wrote code for, or created the software for Newcomb Diesel. Neither Rodriguez nor Detroit Diesel was involved in any contract between Wheelbarger and Newcomb Diesel or served any role other than locating the software designer at Newcomb Diesel's request, for which it received a fee of $200. Both Rodriguez and Detroit Diesel are located in Michigan; do not maintain any office or physical presence in Nebraska; do not own property, keep records, or employ anyone in Nebraska; and do not generate continued revenue from Nebraska.

It is clear from this record that the Michigan Defendants' involvement in this action stems from Detroit Diesel's

- 154 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

request for software resulting from an advertisement on the Michigan Defendants' website. As a result of that request, the Michigan Defendants relayed the information to a third-party software developer who then negotiated a deal with Newcomb Diesel, which then installed the software for Wheelbarger. The Michigan Defendants represented that this is their standard business practice. The nature of Wheelbarger's claim against the Michigan Defendants sounds in negligence, strict products liability, and breach of warranty related to this software. The question becomes whether the Michigan Defendants' internet-based practices, all of which originated from the State of Michigan, created sufficient minimum contacts with this state such that the Michigan Defendants should reasonably anticipate being haled into court in this state.

[20-23] The framework for a personal jurisdiction analysis of these facts was set forth by the Nebraska Supreme Court in *Abdouch v. Lopez*, 285 Neb. 718, 829 N.W.2d 662 (2013). In *Abdouch*, the plaintiff, a Nebraska resident, sued a book company located in Massachusetts for violating her privacy rights in connection with an advertisement on its website which used her name. In analyzing whether the book company had sufficient minimum contacts with the State of Nebraska in connection with its internet-based practices, the Nebraska Supreme Court held:

The Internet and its interaction with personal jurisdiction over a nonresident is an issue of first impression for this court. Although other courts will help guide our decision, we take note that technological advances do not render impotent our longstanding principles on personal jurisdiction. The U.S. Supreme Court explained: "As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the

- 155 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer v. Neff*, 95 [U.S.] 714[, 24 L. Ed. 565] [(1877)], [*overruled in part, Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977),] to the flexible standard of *International Shoe Co. v. Washington*, 326 U.S. 310[, 66 S. Ct. 154, 90 L. Ed. 95] [(1945)]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. . . . Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States."

With this in mind, the Eighth Circuit, as well as the majority of circuits, has adopted the analytical framework set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, [952 F. Supp. 1119 (W.D. Pa. 1997),] for internet jurisdiction cases. In that case, Zippo Manufacturing Company filed a complaint in Pennsylvania against nonresident Zippo Dot Com, Inc., alleging causes of action under the federal Trademark Act of 1946. Zippo Dot Com's contact with Pennsylvania consisted of over 3,000 Pennsylvania residents subscribing to its Web site. The district court in *Zippo Mfg. Co.* famously created a "sliding scale" test that considers a Web site's interactivity and the nature of the commercial activities conducted over the Internet to determine whether the courts have personal jurisdiction over nonresident defendants. The court in *Zippo Mfg. Co.* explained the "sliding scale" as follows: "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in

- 156 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

The district court held that Pennsylvania had personal jurisdiction over Zippo Dot Com and the causes of action. In doing so, the district court made two important findings. First, the district court found that the Zippo Dot Com Web site was a highly interactive commercial Web site. Second, and more important, the district court found that the trademark infringement causes of action were related to the business contacts with customers in Pennsylvania.

Although widely recognized and accepted, most circuits use the *Zippo Mfg. Co.* sliding scale of interactivity test only as a starting point. As the Second Circuit noted, "'it does not amount to a separate framework for analyzing internet-based jurisdiction'"; instead, "'traditional statutory and constitutional principles remain the touchstone of the inquiry.'"

The Seventh Circuit has noted that "'[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is "interactive."'" Many courts have held that even if the defendant operates a "'highly interactive'" Web site which is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.

- 157 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

Our precedent states that for there to be specific personal jurisdiction, the cause of action must arise out of or be related to the defendant's contacts with the forum state. This is consistent with the U.S. Supreme Court's precedent which has stated "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."

*Abdouch v. Lopez*, 285 Neb. 718, 726-29, 829 N.W.2d 662, 671-73 (2013).

[24] Further, in describing how the general principles governing an evaluation of minimum contacts relate to the "*Zippo* Test," the Eighth Circuit Court of Appeals held:

With these principles in mind, [the court considers] five distinct factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.

*Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003). "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Id*.

Additionally, in *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 710 (8th Cir. 2003), the Eighth Circuit stated:

In *Zippo* [*Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)]—also a case of specific jurisdiction—the court examined the few cases that had previously addressed the issue of whether a Web site could provide sufficient contacts for specific personal jurisdiction. It applied the results of these cases to the traditional personal jurisdiction analytical framework, noting that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to

- 158 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

the nature and quality of the commercial activity that an entity conducts over the Internet." . . . In order to measure the nature and quality of the commercial activity, the court created a "sliding scale" to measure the likelihood of personal jurisdiction.

In performing that analysis, we note Rodriguez' assertions that the website does not target Nebraska or its residents. We further note that the Michigan Defendants' services performed here were solely in response to an inquiry from a Nebraska company generated from that website which resulted in the Michigan Defendants' locating a software developer for the Nebraska company. The Michigan Defendants did not negotiate, contract for, or sell the product notwithstanding the allegations that they should be legally liable for negligence, strict products liability, and breach of warranty for those products.

A similar scenario was presented in *Miller v. Berman*, 289 F. Supp. 2d 1327 (M.D. Fla. 2003). In *Miller*, a potential purchaser of a sailboat responded to a website advertisement of a company seeking a particular type of sailboat. Because the company did not sell the particular sailboat the purchaser was looking for, it placed the purchaser in contact with the owner of a boat dealership which then separately negotiated to sell the purchaser a customized sailboat. The company received a commission for its services in connecting the parties. The purchaser later sued the dealer and the company, alleging negligent misrepresentation, breach of warranty, false advertising, and joint venture liability. The company, an Ohio-based corporation, moved to dismiss the claim, which had been filed in Florida, for lack of personal jurisdiction. In describing the framework for its analysis, the federal district court held:

"Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. Different results should not be reached simply because business is conducted over the Internet." [*Zippo Mfg.*

- 159 -

Nebraska Court of Appeals Advance Sheets
31 Nebraska Appellate Reports
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

*Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119,] 1124
[(W.D. Pa. 1997)]. However, the law surrounding issues
of jurisdiction and the internet has not fully developed,
and the case law on this subject suggests that a Court
must look at the nature of a website and the commercial
activity actually being conducted over a website in order
to determine whether personal jurisdiction can be consti-
tutionally exercised. *See* [*id*.] (explaining that exercise
of jurisdiction is determined by examining the level of
interactivity and commercial nature of the exchange of
information that occurs on the Web site).

For example, "[a]t one end of the spectrum are sit-
uations where a defendant clearly does business over
the Internet. If the defendant enters into contracts with
residents of a foreign jurisdiction that involve the know-
ing and repeated transmission of computer files over the
internet, personal jurisdiction is proper. At the opposite
end are situations where a defendant has simply posted
information on an Internet Web site which is accessible
to users in foreign jurisdictions. *A passive Web site that
does little more than make information available to those
who are interested in it is not grounds for personal juris-
diction.*" *Zippo*, 952 F.Supp. at 1124 (internal citations
omitted) (emphasis added). In order to determine whether
personal jurisdiction can be exerted over Defendants in
this instance the Court must examine the nature of the
interaction between [the plaintiff] and Defendants over
the Internet. Based on the information on the record, the
Defendants did not conduct business over the Internet, nor
did Defendants solicit business over the Internet. Rather,
it was [the plaintiff] who contacted Defendants via e-mail
after [the plaintiff] came across Defendants' Informational
website on the Internet.

The website at issue here is a passive one which
merely makes information available to individuals who
are interested in purchasing sailboats. Thus, the exercise

- 160 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
31 NEBRASKA APPELLATE REPORTS
WHEELBARGER v. DETROIT DIESEL
Cite as 31 Neb. App. 145

of jurisdiction over Defendants in the State of Florida is not proper because placing an informational website on the Internet does not amount to sufficient contacts with the forum. To hold otherwise would undermine the policy behind the minimum contacts framework which seeks to protect defendants from being haled into court in a foreign jurisdiction based upon contacts that are random or attenuated. *Zippo*, 952 F.Supp. at 1123 (explaining that minimum contacts analysis protects defendants from being forced to answer for their actions into foreign jurisdictions based on random, fortuitous or attenuated contacts). Based upon the nature of the exchange between the parties over the Internet and the passive website, the Court concludes that Defendants did not purposefully direct business activities toward Florida, and therefore, jurisdiction in Florida would not comport with traditional notions of fair play and substantial justice.

*Miller v. Berman*, 289 F. Supp. 2d 1327, 1335-36 (M.D. Fla. 2003).

We reach a similar conclusion here. Although there is minimal description of the nature of the Michigan Defendants' website, it appears that the Michigan Defendants did not actively solicit business in the State of Nebraska, but simply responded to Newcomb Diesel's inquiry after Newcomb had come across the Michigan Defendants' website. Further, the Michigan Defendants did not directly contract or sell a product following the inquiry by Newcomb, but simply facilitated the request for the product to a third party who negotiated and supplied the product to Newcomb. The causes of action deal directly with alleged problems with that product, the nature of which was separately negotiated with the software developer and Newcomb Diesel based on Wheelbarger's expectations. Under these circumstances, we find that the Michigan Defendants did not purposefully direct business activities toward Nebraska and that therefore, the Michigan Defendants

lacked sufficient minimum contacts with this state to be haled into court within this forum.

## EVALUATION OF REASONABLENESS

[25] Having determined that the Michigan Defendants lacked sufficient minimum contacts with this forum, we need not further determine whether it is fair and reasonable to exercise personal jurisdiction over them. See *Baker-Heser v. State*, 309 Neb. 979, 963 N.W.2d 59 (2021) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).

## CONCLUSION

For the reasons stated above, we affirm the district court's dismissal for lack of personal jurisdiction.

AFFIRMED.